UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM HOLBROOK, personal representative of the Estate of Wanda Holbrook,

    Plaintiff,

v.

PRODOMAX AUTOMATION LTD., et al.,

    Defendants.
_____/

Case No. 1:17-cv-219

Honorable Hala Y. Jarbou

## OPINION

Before the Court is Defendant Flex-N-Gate, LLC's ("FNG") motion for summary judgment. (ECF No. 128.) The motion argues that Plaintiff William Holbrook's claims against FNG are barred by the Michigan Workers' Compensation Disability Act ("WDCA"), Mich. Comp. Laws § 418.101, *et seq.* For the reasons set forth below, FNG's motion for summary judgment will be denied.

### I. BACKGROUND

Plaintiff William Holbrook sued FNG on behalf of his deceased wife, Wanda Holbrook ("Wanda"). Wanda was employed as a journeyman maintenance technician at Ventra Ionia LLC ("Ventra") in Ionia, Michigan. (First Am. Compl. ¶¶ 12-13, ECF No. 43.) Ventra's business consists of "stamping, welding, chrome plating, molding, assembly and testing for chrome-plated plastics, bumpers, and trailer hitches." (*Id.* ¶ 12.) Wanda's job was to adjust welding processes and perform maintenance on robots working in the welding department. In July 2015, a robot

unexpectedly entered an area in which Wanda was working and crushed her head. First responders pronounced Wanda dead at the scene.

William Holbrook received workers' compensation payments from Ventra until April 2016, when Ventra claimed that it was not required to pay workers' compensation because Wanda was acting outside the scope of employment at the time of her death. (*See* Appl. for Mediation or Hr'g, ECF No. 128-1.) Alleging a violation of the WDCA, William Holbrook lodged a complaint against Ventra with the Michigan Workers' Compensation Agency in June 2016. (*Id.*) The parties settled and Ventra paid William Holbrook $125,000 in workers' compensation. (Stancil Decl., ECF No. 128-2.)

William Holbrook ("Plaintiff") brought the present suit against six defendants in March 2017. (Compl., ECF No. 1.) Five claims are currently maintained against FNG: Negligence (Count V), Product Liability – Design Defect (Count VII), Product Liability – Manufacturing Defect (Count VIII), Product Liability – Breach of Implied Warrant (Count IX), and Product Liability – Failure to Warn (Count X).[1] Plaintiff alleged that FNG, among other defendants, negligently "performed the installation, integration, engineering and/or ongoing servicing of components" of the robot that killed Wanda (First Am. Compl. ¶ 53) and that FNG defectively designed and manufactured the robot in question (First Am. Compl. ¶¶ 67, 74.)

Discovery has commenced between Plaintiff and FNG. FNG served a series of interrogatories, several of which requested Plaintiff identify "the specific acts and instances upon which" his allegations against FNG were based. (Pl.'s Answer to Interrog. 2, ECF No. 128-3.) Plaintiff objected that the interrogatory was "premature" given the early stage of discovery but

---

[1] Plaintiff also brought claims for *Res Ipsa Loquitor* (Count VI) and Concert of Action (Count XI) against FNG, but the Court found that Counts VI and XI were not viable causes of action. (Op. & Order Granting Summ. J. 7-8, ECF No. 89.)

2

pointed to deposition testimony of a Ventra employee claiming that FNG was a parent company of Ventra.[2] (*Id.*)

Plaintiff's answers to the interrogatories form the basis of FNG's summary judgment motion. Defendant argues the interrogatory answers demonstrate that Plaintiff's sole theory of liability is that, as the parent of Ventra, FNG is liable for misconduct committed by Ventra employees relating to the installation of the robot that killed Wanda. (*See* Mot. for Summ. J. 7-8.) Because "Plaintiff's claims against [FNG] . . . are based solely upon the alleged acts or omissions of Ventra," FNG could only be held liable for those actions if: (1) it were the parent of Ventra; and (2) it would be appropriate to treat FNG and Ventra as a single entity rather than separate corporations. (*Id.* at 7.)[3] However, if FNG were an entity inseparable from Ventra, then all Plaintiff's claims would be barred by the "exclusive remedy provision" of the WDCA. (*Id.*) Section 418.13 of the WDCA provides that the statute serves as the "exclusive remedy against . . . employer[s] for a personal injury or occupational disease." Thus, FNG argues that Plaintiff faces an insurmountable dilemma: (1) either FNG and Ventra are distinct corporations, in which case Defendant cannot be liable for actions taken by Ventra employees; or (2) FNG and Ventra are a single entity, in which case the WDCA applies and Plaintiff cannot seek a remedy from FNG, having already recovered from Ventra. Because Plaintiff would lose either way, FNG has sought summary judgment.

## II. STANDARD

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories,

---

[2] The deposition was taken in connection with Plaintiff's prior workers' compensation case, not for the present case.
[3] Ventra and FNG are in fact separate corporations. (*See* Graham Decl., ECF No. 128-4.)

and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). In considering the facts, the court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

### III. ANALYSIS

Defendant's argument rests on one foundation: Plaintiff's March 27 answer to interrogatories amounted to an admission that FNG and Ventra are a single corporate entity.[4] Because Plaintiff's claim would be barred by the WDCA if FNG and Ventra were one corporation (which would certainly be a material fact), Defendant is entitled to summary judgment. FNG's position is untenable.

Answers to interrogatories may be "proper as admissions," but such admissions "are not necessarily binding." *Walker v. Mulvihill*, 83 F.3d 423, at *5 (6th Cir. 1996) (citing *Freed v. Erie*

---

[4] For the purpose of its motion, Defendant assumes that FNG and Ventra are a single corporation. (*See* Def.'s Br. 7-8.) FNG does not actually concede that it is the same entity as Ventra, and it is not required to do so to bring this motion. *See Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948) ("Each, in support of his own motion may be willing to concede certain contentions of his opponent, which concession, however, is only for the purpose of the pending motion. If the motion is overruled, the concession is no longer effective.").

*Lackawanna Ry. Co.*, 445 F.2d 619, 621 (6th Cir. 1971)). "'An answer to an interrogatory is comparable to answers, which may be mistaken, given in deposition testimony or during the course of the trial itself. Answers to interrogatories must often be supplied before investigation is completed and can rest only upon knowledge which is available at the time.'" *Freed*, 445 F.2d at 621 (quoting *Victory Carriers, Inc. v. Stockton Stevedoring Co.*, 388 F.2d 955, 959 (9th Cir. 1968)).

In answering FNG's interrogatories, Plaintiff noted that discovery was ongoing and reserved the right to amend his answers as discovery continued. (Pl.'s Answer to Interrog. 3.) Plaintiff has since found evidence that genuine FNG employees were involved in the installation and testing of the robot at issue. (*See, e.g.*, Pl.'s Opp'n Br. 4-5, ECF No. 131 ("[A]ccording to recent discovery . . . [FNG employees] were present or participated in the initial testing of the equipment at the Prodomax facility . . . [some of whom] also participated in re-assembling of the equipment at the [FNG] facility.") *See also id.*, at 14 ("[FNG] provided production, material handling and 'maintenance' personnel for 'training' and set up of the equipment. . . . [FNG] employees [also] . . . participated in the final acceptance of the equipment.").) Hence, at this stage, Plaintiff's theory of liability cannot be said to rest exclusively on treating FNG and Ventra as a single entity in order to hold Defendant responsible for actions taken by Ventra employees. To the extent Plaintiff answered that he believed FNG and Ventra were a single corporation, he is not bound by that answer.

At this point in time, summary judgment is inappropriate. Plaintiff is not asserting that Ventra and FNG are one corporation, nor is he claiming that Ventra employees were the sole source of the tortious conduct that led to Wanda's death. He does not face the insurmountable

5

dilemma posited by FNG.  Perhaps the dilemma will rear its head again when discovery concludes in the spring of 2021; for now, Plaintiff's claims are not subject to dismissal.

## IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment (ECF No. 128) will be denied.  An order will enter in accordance with this Opinion.


Dated:  November 5, 2020                     /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             UNITED STATES DISTRICT JUDGE