UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM HOLBROOK, personal
representative of the Estate of Wanda
Holbrook,

    Plaintiff,

v.

PRODOMAX AUTOMATION LTD., et al.,

    Defendants.
_____/

Case No. 1:17-cv-219

Hon. Hala Y. Jarbou

## **OPINION**

This case concerns the death of Wanda Holbrook, who was killed on the job while trying to fix an automated assembly line. The Court recently issued an Opinion (ECF No. 340) and Order (ECF No. 341) on multiple motions for summary judgment, which resulted in the dismissal of all claims against Defendant Flex-N-Gate, LLC. Flex-N-Gate remains in the case because it asserts a cross-claim against Defendant Prodomax Automation, Ltd. (ECF No. 52.) Flex-N-Gate contends that Prodomax is contractually obligated to defend and indemnify it from any liability in this suit. The two parties dispute whether a quotation by Prodomax should be considered an offer or whether Flex-N-Gate's subsequent purchase orders should instead be considered the original offers. If the purchase orders do not qualify as the original offers, Flex-N-Gate asserts that they amounted to rejections and counteroffers that Prodomax then accepted.

The companies have cross-moved for summary judgment on the issue. (ECF Nos. 256, 305.) There is a genuine dispute of material fact regarding whether Prodomax's quotation constituted an offer. As a matter of law, Flex-N-Gate's purchase orders do not amount to rejections and counteroffers. Consequently, both motions for summary judgment will be denied.

## I. JURISDICTION

All of Plaintiff's claims are rooted in state law. As explained in the prior opinion, the Court has jurisdiction over this case because the parties are completely diverse and the amount in controversy exceeds $75,000. (9/20/2021 Op. 1-2 (citing 28 U.S.C. § 1332).) Flex-N-Gate's cross-claim is based on an indemnity clause that it says formed part of the contract with Prodomax to produce the assembly line that is the subject of Plaintiff's claims. Flex-N-Gate's cross-claim is "part of the same case or controversy" as Plaintiff's claims; the Court may therefore exercise supplemental jurisdiction over the cross-claim. 28 U.S.C. § 1367(a).

## II. BACKGROUND

Ford Motor Company contracted Flex-N-Gate to supply trailer hitch receiver assemblies for Ford's F-150 pickup trucks. These hitch assemblies would be manufactured at a facility operated by Flex-N-Gate's affiliate, Ventra Ionia Main, LLC. Ultimately, Flex-N-Gate contracted Prodomax to design, build, and install automated assembly lines at Ventra Ionia that would manufacture the trailer hitch receiver assemblies. (Purchase Orders, ECF Nos. 305-7, 305-8.)

In October 2012, Flex-N-Gate disseminated a Request for Quotation seeking quotations from various companies that could provide automated assembly lines. (Wiegand Dep. 22, ECF No. 305-2; Young Dep. 15, ECF No. 305-3.) Prodomax responded with proposed designs and engaged in discussions with Flex-N-Gate. (Wiegand Dep. 20-21.) Prodomax compiled a final Quotation on January 25, 2013, which it submitted to Flex-N-Gate on February 1. (Quotation 1, 13, ECF No. 305-4.)

The Quotation sometimes refers to itself as a "quotation" and other times as an "offer." (*See Id.* at 2.) It includes a list of items that would be used to make the assembly lines and notes which parts would be supplied by Flex-N-Gate. (*Id.* at 5-7.) The Quotation states that the assembly lines would be assembled at Prodomax's facility in Ontario, Canada, for inspection. If Flex-N-

2

Gate was satisfied with the lines, they would be disassembled, transported to the United States, and installed at the Ventra Ionia facility. (*Id.* at 8-9.) The Quotation also sets five milestones for the project, spanning about fifteen months. (*Id.* at 11.) Other "[k]ey milestones" were to be set "within two weeks of receipt of an order." (*Id.*)

The Quotation includes several appendices, including "Standard Terms and Conditions of Sale." (*Id.* at 14-18.) Among other things, the standard terms and conditions state that "any order submitted by [Flex-N-Gate] will only be accepted with the understanding that [these] terms and conditions will apply to the legal obligations which result between the parties. The prices quoted herein are based upon this understanding and [Flex-N-Gate's] acceptance of these unqualified terms and conditions." (*Id.* at 14.)

Appendix B relates to pricing and lists various items for "capital" and "tooling" expenses, almost $3.4 million total. (*Id.* at B1.) Two add-on services were available for an extra $110,000. (*Id.*) Scott Young, a Prodomax senior account manager who worked on the deal, described the Quotation as a "firm commercial offer[.]" (Young Dep. 13.) But he also referred to the price table in Appendix B as "an itemized menu" of projects that Flex-N-Gate could award "at their discretion" to Prodomax or to "another supplier." (*Id.* at 28.)

Flex-N-Gate responded with a Purchase Order Addendum (ECF No. 305-6), and issued two Purchase Orders (POs) on February 27, 2013.[1] One PO was for "machinery capital" (ECF No. 305-7) while the other was for "tooling" (ECF No. 305-8). For simplicity, and because the POs relate to a single agreement, the Court will treat the two separate purchase orders as one PO. The total price was $3,481,095. (ECF No. 305-6.) The PO Addendum incorporated Flex-N-Gate's

---

[1] In truth, Ventra Ionia issued the purchase orders, with Flex-N-Gate having caused them to do so. To keep things simple, the Court will treat Flex-N-Gate as the issuer of the purchase orders.

3

"terms and conditions" and states that they "will be the master for any conflicts." (*Id.*) The PO also incorporates the "Standard Terms," and provides a URL link where they may be read. (ECF Nos. 305-7, 305-8.)

The PO contains the following language:

[Prodomax] confirms that it has read and understands [Flex-N-Gate's] Codes and Standard Terms. If [Prodomax] accepts this Contract in writing or commences any work or services which are the subject of this Contract, [Prodomax] will be deemed to have accepted [Flex-N-Gate's] Codes and Standard Terms in their entirety without modification. Modification to this Contract which [Prodomax] proposes will be deemed to be expressly rejected by [Flex-N-Gate] except to the extent that [Flex-N-Gate] expressly agrees to accept any such proposals in writing.

(ECF Nos. 305-7, 305-8.)

The incorporated Standard Terms state, in pertinent part, that:

[Prodomax's] acceptance of any Contract is limited to acceptance of the express terms and conditions set forth in the Contract and in these Standard Terms. Notwithstanding [Flex-N-Gate's acceptance of or payment for any shipment of goods, provision of Supplies or similar . . . act, [Flex-N-Gate] will not be bound by any purported acceptance of any Contract on terms and conditions which modify, supersede, supplement, or otherwise alter the Contract or these Standard Terms and such terms and conditions shall be deemed rejected and replaced by the Contract unless [Prodomax's] proffered terms or conditions are accepted in a physically signed writing by [Flex-N-Gate's] authorized representative . . . . The parties intend that these Standard Terms shall exclusively control their relationship, and in the event of any inconsistency between any invoice or acceptance form sent by [Prodomax] to [Flex-N-Gate] and these Terms, these Standard Terms will control.

(Standard Terms, ECF No. 305-9, PageID.6506.)

On February 28, 2013, Prodomax sent a letter accepting Flex-N-Gate's PO. (ECF No. 305-12.) In apparent accordance with Flex-N-Gate's Standard Terms, which required Prodomax to submit objections within five days, the letter states that "Prodomax cannot accept the TERMS AND CONDITIONS 'OEM Payment to Ventra' as listed upon the Capital and [Tooling] purchase order documents as those terms contradict the mutually agreed upon terms as documented in *Flex N Gate Machinery Standards* Rev Level 17, Chapter 18, page 30." (*Id.* (emphasis in original).)

4

Prodomax built and installed the assembly lines at Ventra Ionia's facility. In July 2015, Wanda Holbrook was killed while conducting maintenance on one of the assembly lines. The present suit was brought against Prodomax, Flex-N-Gate, and others, in March 2017. Citing an indemnity clause in its Standard Terms, Flex-N-Gate asked Prodomax to defend it and indemnify against resulting liability. Prodomax refused, contending that the lawsuit fell within certain exceptions set forth in the indemnity clause. (ECF No. 305-15.) Flex-N-Gate asserted its cross-claim seeking defense and indemnification.

## III. STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).

A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).

In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party.  *Id.*  Summary judgment is not an opportunity for the Court to resolve factual disputes.  *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

The parties agree that the Uniform Commercial Code (UCC) and Michigan law apply here. The companies dispute who made the offer and who made the acceptance, as well as whether Flex-N-Gate made what is known as a conditional acceptance.  These disputes matter because they determine whether or not Prodomax is bound to defend and indemnify Flex-N-Gate.[2]  The Standard Terms in the PO require Prodomax to defend Flex-N-Gate; the Quotation's Standard Terms do not.  There are two key questions: (1) was Prodomax's "Quotation" actually an offer; and (2) if so, did Flex-N-Gate's PO constitute a rejection and counteroffer to Prodomax's offer?

If Prodomax's Quotation does not qualify as an offer then the only offer between the parties was the PO, which Prodomax accepted—indemnity clause and all.  If the Quotation qualifies as an offer, then the question is whether Flex-N-Gate's PO counts as a conditional acceptance.  A conditional acceptance is functionally a rejection followed by a counteroffer: the party "accepts" the offer but includes different or additional terms in its acceptance that the counterparty *must* agree to for the agreement to go forward.  If Flex-N-Gate issued conditional acceptances, then the Standard Terms referenced in the PO govern the parties' agreement.  *Challenge Mach. Co. v. Mattison Mach. Works*, 359 N.W.2d 232, 235-36 (Mich. Ct. App. 1984).  If the PO does not constitute a conditional acceptance, then the indemnity clause does not apply.[3]  Mich. Comp. Laws §§ 440.2207(1)-(2).

---

[2] Because all of Plaintiff's claims against Flex-N-Gate have been dismissed, the sole issue is whether or not Prodomax is required to defend Flex-N-Gate, i.e., pay its legal bills associated with this lawsuit.

[3] Though not explicitly stated, the parties appear to agree that the indemnity clause would materially alter the agreement such that the clause would not become part of the contract by operation of Mich. Comp. Laws

### A. Prodomax's Quotation May Be an Offer

"Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract." *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (citation and internal quotation marks omitted). "Instead, a buyer's purchase agreement submitted in response to a price quotation is usually deemed the offer." *Id.* However, a quotation can constitute an offer "if it is sufficiently detailed and it reasonably appears from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract." *Id.* (citation and internal quotation marks omitted); *see also Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503, 506 (6th Cir. 2006) ("Generally, an offer is a manifestation of one's intent to be bound, stating the essential terms with sufficient specificity that acceptance by another will conclude the bargain." (citing *Challenge Mach. Co.*, 359 N.W.2d at 235)). In determining whether a quotation is an offer, "[c]ourts must often look beyond the words employed [in the document] in favor of a test which examines the totality of the circumstances." *Challenge Mach. Co.*, 359 N.W.2d at 235.

Sometimes a quotation nails down so few material terms that it fails to qualify as an offer as a matter of law. *See Dyno Constr. Co.*, 198 F.3d at 571, 573-74. Ambiguity arises when the quotation covers many material terms and there are additional facts that indicate the quotation was meant to be construed as an offer. For example, the court in *Challenge Machinery* found a price quotation for a surface grinder to be an offer where the parties "had engaged in a series of negotiations . . . prior to the submission of the final price quotation" and the subsequent purchase order "was responsive to the . . . proposal and made specific reference to that [quotation], both by date and number." 359 N.W.2d at 235; *see also Laforce, Inc. v. Pioneer Gen. Contractors, Inc.*,

---

§ 440.2207(2)(b) (additional terms set forth in an acceptance become part of the contract unless they "materially alter" the agreement). Generally, the materiality of a proposed term is treated as a question of fact for the jury. 2 Williston on Contracts § 6:22 (4th ed.). Indemnity clauses specifically, though, have been held to constitute material alterations as a matter of law. *Power Press Sales Co. v. MSI Battle Creek Stamping*, 604 N.W.2d 772, 776 (Mich. Ct. App. 1999).

No. 299848, 2011 WL 4467762, at *5 (Mich. Ct. App. Sept. 27, 2011) (finding quotation to be offer "considering the totality of the circumstances and the factual similarity . . . [to] *Challenge Machinery*").

In *Synergen Inc. v. FCA US LLC*, No. 16-cv-11842, 2020 WL 1333425 (E.D. Mich. Mar. 23, 2020), the quotation in question "included a description of the product, price, quantity, and terms of payment." *Id.* at *9. The court deemed these terms "sufficient to support a finding that the [quotation] manifested [the party's] willingness to enter into a bargain and that . . . assent to the bargain was invited and would conclude it." *Id.* Nevertheless, there was a genuine dispute of material fact because "other elements of the [quotation] suggest[ed] it was not an offer": the terms "were subject to change based on the requirements of the final approved . . . specification"; the quotation was "labeled 'Estimate,' did not contain the word 'offer,' and did not include warranty information." *Id.* A question of fact also existed where:

> (i) the price quotation was developed by the defendant after the parties engaged in substantial negotiations; (ii) the quotation included a description of the product, a list of various quantities at various prices, terms of payment, and delivery terms; (iii) the quotation contained the statement 'This quotation is offered for your acceptance within 30 days'; and (iv) the price which the purchaser paid was the price listed in the price quotation rather than the price listed in the purchaser's subsequent purchase order.

*Dyno Constr. Co.*, 198 F.3d at 573 (citing *Bergquist Co. v. Sunroc Corp.*, 777 F. Supp. 1236, 1249 (E.D. Pa. 1991)).

The facts here resemble those encountered in *Synergen* and *Bergquist*. The Quotation went through several iterations over about three months before being issued in its final form. (*See* Quotation 13.) It includes detailed descriptions of the assembly lines and the various things Prodomax would do to produce them. The Quotation lists prices for many discrete tasks and parts (Appendix B at B1), sets payment terms, a payment schedule, and delivery terms (Quotation 11-12), sets a general timeline for project completion (*id.* at 11), and dictates terms and conditions

that would govern any "[o]rders based on this Proposal" (*id.* at 14). The Quotation sets forth the essential terms with sufficient specificity to qualify as an offer.

That does not mean the Court is able to say the Quotation is an offer as a matter of law, however. Other facts cut against such a finding. The Quotation itself uses conflicting language, referring to itself as an "offer," a "quotation," and a "proposal." Prodomax's senior account manager described the Quotation as a "firm commercial offer[.]" (Young Dep. 13.) But he also referred to the price table in Appendix B as "an itemized menu" of projects that Flex-N-Gate could award "at their discretion" to Prodomax or to "another supplier." (*Id.* at 28.) Flex-N-Gate argues that, because Prodomax only provided an "itemized menu," the exact price and scope of work was left undefined by the Quotation, rendering it a mere invitation to an offer. But a reasonable jury could conclude that Prodomax would be bound to provide any part or task on that menu that Flex-N-Gate assented to. *See Bergquist Co.*, 777 F. Supp. at 1249. A reasonable jury could find a binding contract if Flex-N-Gate simply responded, "we'll take it all."

A jury must decide whether the Quotation was an offer. Both motions ask the Court to find otherwise. Both motions will be denied in this respect. The Court cannot say whether the Quotation was an offer one way or the other.

### B. Flex-N-Gate Did Not Render a Conditional Acceptance

If Flex-N-Gate's PO constituted a conditional acceptance, then it is irrelevant whether the Quotation qualifies as an offer; either way, Flex-N-Gate's Standard Terms would control, which would require Prodomax to defend Flex-N-Gate. This is because a conditional acceptance can add material terms to an agreement, so long as the counterparty expressly assents to the conditional acceptance. *Ralph Shrader, Inc. v. Diamond Int'l Corp.*, 833 F.2d 1210, 1213 (6th Cir. 1987).

"The conditional assent provision [of the UCC] has been narrowly construed to require that the acceptance must clearly reveal that the offeree is *unwilling to proceed* unless assured of the

9

offeror's assent to the additional or different terms." *Challenge Mach. Co.*, 359 N.W.2d at 235 (citing *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924 (6th Cir. 1979); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir. 1972)) (emphasis added). Language indicating an "unwillingness to proceed" is paramount. *Id.* In *Challenge Machinery*, the provision at issue stated "buyer expressly limits acceptance to the terms hereof and no different or additional terms proposed by seller shall become part of the contract." *Id.* at 234. That provision did not create a conditional acceptance. Nor did the defendant in *Robert Bosch* muster a conditional acceptance: "Although the PO stated that acceptance was limited to its terms, [the PO] did not clearly indicate that the failure to do so voided the transaction." *Robert Bosch Corp.*, 195 F. App'x at 506. Another plaintiff tried "[t]his order expressly limits acceptance to the terms and conditions stated herein, and any additional or different terms proposed by the Seller are rejected unless expressly assented to in writing by the Buyer. No contract shall exist except as hereinabove provided." *Eaton Corp. v. Mins. Techs. Inc.*, No. 96-cv-162, 1999 WL 33485557, at *5 (E.D. Mich. Mar. 19, 1999). That did not work either. *Id.*

      Flex-N-Gate points to *Ralph Shrader*, where the Sixth Circuit found a conditional acceptance. But its decision turned on this phrase: "The terms set forth . . . are the *only ones upon which we will accept* orders." *Ralph Shrader, Inc.*, 833 F.2d at 1215 (internal quotation marks omitted) (emphasis in original). Such a statement sufficiently warns the offeree that the offeror is "unwilling to proceed" unless the different or additional terms receive assent. Flex-N-Gate's PO and the Standard Terms it incorporates do not contain the kind of language needed to create a conditional acceptance. Flex-N-Gate's language generally tracks the various provisions that have failed to make a conditional acceptance. (*See, e.g.*, ECF No. 305-7 (Prodomax will be "deemed to have accepted" the Standard Terms and "[m]odifications . . . will be deemed to be expressly

10

rejected"); Standard Terms, PageID.6506 (acceptance is "limited to acceptances of [Flex-N-Gate's] express terms and conditions").) Nowhere does Flex-N-Gate say that it will *refuse to deal* with Prodomax unless it accepts the PO's Standard Terms.

In sum, Flex-N-Gate did not render a conditional acceptance that could trump Prodomax's Quotation should the Quotation constitute an offer.

### C. Flex-N-Gate's Anti-Battle-of-the-Forms Clause Does Not Necessarily Control

Flex-N-Gate offers a somewhat circular argument for why its PO should control the agreement notwithstanding the Quotation's potential status as an offer. Flex-N-Gate's Standard Terms includes a provision stating:

> The parties have agreed that it is their intent that the battle of the forms[4] described in Section 2207 of the Uniform Commercial Code will not apply to these Standard Terms or to any invoice or acceptance form of [Prodomax] related to these Standard Terms of any Contract. The parties intend that these Standard Terms shall exclusively control their relationship, and in the event of any inconsistency between any invoice or acceptance form sent by [Prodomax] to [Flex-N-Gate] and these Terms, these Standard Terms shall govern.

(Standard Terms, PageID.6506.)

But this argument presumes that Prodomax accepted the Standard Terms at all. Prodomax says it made an offer, which Flex-N-Gate accepted. Because the PO did not constitute a conditional acceptance, the only way the anti-battle-of-the-forms clause could be incorporated into their agreement is by first using the battle of the forms analysis in the UCC. Even then, the

---

[4] "The battle of the forms" is a phrase used to describe how the UCC handles successive offers and acceptances between merchants, where each party proposes different or additional contract terms. The common law applies the "mirror image" rule: there is no contract unless the terms proposed in the offer exactly match the terms set forth in the acceptance. Section 2-207 of the UCC (codified at Mich. Comp. Laws § 440.2207), however, recognizes a valid contract any time the parties agree on the essential terms of the deal. Under the UCC, nonessential and nonmaterial terms proposed in an acceptance become part of the contract unless the offeror timely objects to the additional or different terms. The parties do "battle" by sending each other forms proposing or rejecting new terms.

provision would form part of the parties' agreement only if it were not a material term. Mich. Comp. Laws § 440.2207(2)(b).

### D. Unsuccessful Arguments by Prodomax

Prodomax makes several unsuccessful arguments that the Court must address.

First, Prodomax argues that the PO did not properly incorporate Flex-N-Gate's Standard Terms. That is, even if the PO governs the parties' agreement, Flex-N-Gate's Standard Terms would not apply because they were not successfully incorporated into the PO. "Where one writing references another instrument for additional contract terms, the two writings should be read together." *Forge v. Smith*, 580 N.W.2d 876, 881 (Mich. 1998). Incorporated documents are treated "as though [their] contents had been repeated in the contract." *Id.* at 881 n.21.

The PO references the Standard Terms five times and provides a URL link where the terms may be read. (*See* ECF Nos. 305-7, 305-8.) In *Century Plastics, LLC v. Frimo, Inc.*, No. 347535, 2020 WL 504977 (Mich. Ct. App. Jan. 30, 2020), the defendant provided a written offer that stated "[t]he offer is based on the General Terms and Conditions" and provided a URL link to those terms and conditions. *Id.* at *2. The Michigan Court of Appeals determined that the defendant had successfully incorporated its general terms and conditions. *Id.* Flex-N-Gate's PO states "[Prodomax] confirms that [Flex-N-Gate's] Standard Terms are incorporated in, and form an integral part of, this contract[.]" (ECF No. 305-8.) The incorporating language could not have been clearer. That language, combined with the URL link, sufficiently incorporated the Standard Terms. Prodomax contends that the incorporation fails due to ambiguity: the PO mentions "Standard Terms" whereas the document's full title is "Standard Terms and Conditions of Supply." There is no ambiguity here because the PO provided a link to the document being incorporated.

Prodomax also asserts that it cannot be subject to the Standard Terms' indemnity clause because it did not expressly assent to the indemnity clause in particular. That would be true where

12

Flex-N-Gate included additional, material terms in an unconditional acceptance of Prodomax's offer. *See* Mich. Comp. Laws § 440.2207(2)(b), cmt. 3 (material alterations "will not be included unless expressly agreed to by the other party"). Although Flex-N-Gate did not render a conditional acceptance, there is still a question of fact regarding whether Prodomax's Quotation constitutes an offer. If Flex-N-Gate's PO is the only true offer that was made, then the Standard Terms—including the indemnification provision—cannot be treated as alterations because they did not propose to alter any offer by Prodomax.

Prodomax further argues that Flex-N-Gate's Standard Terms cannot apply because Flex-N-Gate agreed to be bound by Prodomax's own terms and conditions. Among other things, those terms state that "Prodomax will not consider a blanket request to substitute or add [Flex-N-Gate's] standard terms. (Quotation 14.) Again, this assumes that the Quotation constituted a true offer. Because there is still a genuine dispute of material fact on that issue, this argument fails on summary judgment.[5]

Prodomax states that it received no consideration in exchange for its purported promise to indemnify and defend Flex-N-Gate. Assuming Flex-N-Gate's PO constitutes the offer governing the parties' agreement, the consideration was the $3.4 million that Flex-N-Gate promised to pay Prodomax for the contract. *See Rowady v. K Mart Corp.*, 428 N.W.2d 22, 25 (Mich. Ct. App. 1988) ("[A]ll consideration paid by defendant in exchange for plaintiff's multiple promises must be viewed as consideration as to each promise[.]").

---

[5] Flex-N-Gate contends that the bulk of Prodomax's terms and conditions (including the refusal to consider blanket changes to the terms and conditions) are inapplicable because Prodomax failed to incorporate them into the Quotation. The Court need not reach this argument because it has already determined that Flex-N-Gate's PO cannot be considered a conditional acceptance. Since Flex-N-Gate made an unconditional acceptance, a material alteration such as the indemnity clause could only form part of the ultimate contract if Prodomax expressly assented to the indemnity clause. *See* Mich. Comp. Laws § 440.2207, cmt. 3. Flex-N-Gate provides no evidence showing that Prodomax expressly assented to the indemnity clause in particular.

Finally, Prodomax contends that Flex-N-Gate's references to "Standard Terms" are ambiguous because, in a totally different context, the parties used the word "standards" interchangeably with a document setting forth the assembly line specifications, "General Equipment Specifications Rev Level 17." (*See* Wiegand Dep. 138-140.)  This claim is meritless.

### E. If the Indemnity Clause Applies, Then Prodomax Has a Duty to Defend

Whether Prodomax is subject to the indemnity clause depends on whether the Quotation constituted an offer, which is itself a question of fact.  However, it is beyond dispute that *if* the indemnity clause applies, then Prodomax has a duty to defend Flex-N-Gate in this lawsuit.

The "duty to defend is broader than the duty to indemnify." *Auto-Owners Ins. Co. v. City of Clare*, 521 N.W.2d 480, 487 (Mich. 1994).  The obligation to defend "is measured by the allegation[s] in the plaintiff's pleading" and "does not depend upon [the indemnitor's] liability to pay." *Zurich Ins. Co. v. Rombough*, 173 N.W.2d 221, 223 (Mich. Ct. App. 1969) (quoting *Geurdon Indus., Inc. v. Fidelity & Cas. Co. of N.Y.*, 123 N.W.2d 143, 147 (1963)) (internal quotation marks omitted).  "It arises in instances in which coverage is even arguable, though the claim may be groundless or frivolous." *Id.* (citing *Polkow v. Citizens Ins. Co. of Am.*, 476 N.W.2d 382, 383 (Mich. 1991)).

Where the contract requires defense and indemnification, the indemnitor is bound to defend "despite theories of liability asserted against [the indemnitee] which are not covered" by the indemnity clause "if there are *any* theories of recovery that fall within the policy." *Citizens Ins. Co. v. Secura Ins.*, 755 N.W.2d 563, 569 (Mich. Ct. App. 2008) (citations and internal quotation marks omitted) (emphasis added).  The indemnitor must "look behind the [plaintiff's] allegations to analyze whether coverage is *possible*." *Id.* (citations and internal quotation marks omitted) (emphasis added).  "In a case of doubt as to whether or not the complaint against the [indemnitee]

alleges a liability of the [indemnitor] under the [contract], the doubt must be resolved in the [indemnitee's] favor." *Id.* (citations and internal quotation marks omitted).

Prodomax argues that even if it agreed to Flex-N-Gate's Standard Terms, it would not be bound to defend Flex-N-Gate in this case. The indemnity clause has some exceptions: Prodomax need not indemnify Flex-N-Gate for any injury, damage, or loss "to the extent such injury, damage or loss results from [Flex-N-Gate's] specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than [Prodomax]." (Standard Terms, PageID.6520.) Prodomax contends that those exceptions apply here, relieving it of the duty to indemnify and therefore defend Flex-N-Gate. But the question is whether any theory of recovery asserted by Plaintiff is arguably covered by the indemnity clause. Among other claims, Plaintiff says Flex-N-Gate failed to warn Wanda Holbrook of allegedly dangerous features of the assembly line where she died. (*See* Compl. ¶¶ 74-77, ECF No. 1; First Am. Compl. ¶¶ 82-85, ECF No. 43.) The indemnity clause's exceptions do not apply to an injury resulting from a failure to warn. Thus, if Prodomax is subject to the indemnity clause, it is required to defend Flex-N-Gate.

## V. CONCLUSION

Neither party is entitled to summary judgment because there is a question of fact on whether Prodomax's Quotation constitutes an offer. If it is an offer, then Prodomax is not bound by the indemnity clause. Flex-N-Gate's PO was an unconditional acceptance proposing a material alteration: the addition of an indemnity clause. A material alteration proposed through an unconditional acceptance only becomes part of the contract if the offeror expressly assents to that alteration. There is no evidence that Prodomax expressly assented to the indemnity clause.

If the Quotation was not an offer, however, then the PO was the only offer in play. Prodomax accepted that offer, which incorporated the Standard Terms. In this scenario, Prodomax

agreed to indemnify and defend Flex-N-Gate.  If the Standard Terms apply, then Prodomax must defend Flex-N-Gate.  An order will enter consistent with this Opinion.


Dated:   October 6, 2021                                         /s/ Hala Y. Jarbou
                                                                                      HALA Y. JARBOU
                                                                                       UNITED STATES DISTRICT JUDGE